First case in the morning, call 2-12-0805. Pete with the State of Illinois v. Nathan Bell. On behalf of Mrs. Bell, Ms. Yasmin Eakin. On behalf of the people, Mrs. Victoria Joseph. Ms. Eakin, you may proceed. May it please the court, my name is Yasmin Eakin, and I represent the appellant, Nathan Bell. Our brief raises three issues, but for purposes of this argument, I intend to focus on the second issue involving the other crimes evidence, and I would be happy to answer any questions on the other two issues. In this case, Mr. Bell was charged with three counts of aggravated criminal sexual assault against the complainant, R.D. Before trial, the State filed a motion in Lemonade to introduce evidence of sexual assaults against four other women to show propensity pursuant to Section 115-7.3 of the Criminal Code. Now, this was a difficult case. The facts in the charge case and the four other crimes cases were disturbing and would tend to evoke a strong emotional response. But it is precisely for that reason that it was critical that counsel challenge the admission of this evidence based on its potential for undue prejudice. And that way, the judge could engage in a meaningful assessment of its probative value versus its prejudicial impact. Now, you're not challenging or disputing that the other crimes are basically approximate in time and were similar to the charge defense, are you? No, Your Honor, no. So your issue is with the prejudicial weighing the probative value part of the analysis? Yes, Your Honor. The volume and the nature and the repetitiveness of the excruciatingly graphic details, that was what caused the undue prejudice of this evidence in this case. What's the standard of review? Is it the abuse of discretion of the trial court? It would be the abuse of discretion of the trial court had counsel objected. But in this case, because counsel didn't object, I've raised it both as ineffective assistance of counsel and as this court reviewed as plain error. So if it's abuse of discretion, it's commonly defined as no reasonable person would agree with the decision of the trial court, correct? Yes, that's right. Now, that's a pretty deferential standard of review, isn't it? It's a pretty high hurdle to overcome, isn't it? It is a high hurdle to overcome. Had the court engaged in this meaningful assessment of probative versus prejudicial value, the problem here is because defense counsel didn't object or in any way try to limit the evidence. At the time the court was engaged in that balancing process, I think that it does become abuse of discretion because the court really only considered the probative value, those factors that you were talking about, the factual similarities, the proximate in time, but not the prejudicial factors. So what did the trial judge say? Where was the breakdown in his ruling specifically? You're saying he didn't weigh the prejudicial proponent. So what did he rule? He ruled that he went through the list of how this evidence was proximate and factually similar. And in detail, he listed those factors as to why. And then in the end, he concluded that the probative value outweighs any potential prejudice. The problem here is, again, because defense counsel didn't object, there's nothing in his order that talks about the undue prejudice caused by the volume of this evidence and the repetitive graphic details of it. There's nothing in that order that talks about the fact that the likelihood that the jury might be distracted by it, that it might become the focal point of the trial, that it would turn into four mini-trials. There's nothing about he was given no opportunity to consider a less prejudicial alternative. How many other women should have been allowed to testify if you think that four was an abuse? Would three be an abuse, or two, or one? What do you think is the demarcation? In this case, I would say based on the nature of the evidence, one would be enough. One would give the state ample evidence to argue propensity and to present that evidence to rebut a consent defense. Once you get into two and then three and then four, testifying to these excruciatingly graphic details, it becomes repetitive. The probative value, it stops being probative and it just starts being a piling on the defendant. The graphic details are what makes it similar and what bolsters the credibility of the named victim in this case, correct? The graphic details, which are so unusual to have happen over and over and over again, and we're not talking about a consent defense where a person is living in an apartment and is assaulted in her apartment. This is a consent defense where clearly prostitutes are being picked up. Everybody knows they're getting in the car to have sexual relations for money, so now we have a situation where they're saying, we consented to that, but we didn't consent to other things. Now doesn't that make this evidence more probative? It makes it probative for one witness. Yes. I mean, one witness could serve all those purposes without causing the undue prejudice that also comes along with this evidence. And the fact of the matter is, is that not all the witnesses that the state presented were prostitutes, if that's the theory. There was one that wasn't. Everyone else wasn't. One other woman testified that at the time she was not, and at the time she was not. Weren't they all doing this for money, though? No. The second witness, KH, if you look at her testimony, testified. In fact, this has made it even more heinous. She testified that she did not even bother. She was just walking down the street and that Mr. Bell drove by her and pulled her in the car, forced her in the car. She said, she specifically said, I was not prostituting at the time. But she had been a prostitute. She had been, but she did not. I mean, the theory is that these women went voluntarily for one purpose and then it changed into something entirely different. She didn't serve that purpose. Another witness testified that five years earlier she had been with Mr. Bell. It was clear. I mean, the state didn't even try to insinuate she was absolutely not a prostitute. So those two witnesses certainly didn't serve that purpose. One of those witnesses, one witness in this case with these kind of prejudicial facts would have been enough. But where do you draw the line? I'm listening to your argument, and it has some superficial, intuitive appeal. Because on the other side of the coin, you know, then you can argue, well, these people can't be believed. Okay. There's two witnesses. One's a prostitute. One you'd have to concede has a shaky background, was a prostitute. Maybe he wasn't at the time. And the state's saying, well, wait a minute. They're going to make the argument in front of the jury that these two people, you know, cannot be believed. Their credibility is suspect. So why can't we bring in other witnesses to corroborate that this is, in fact, the pattern? It isn't just two people who are lying or making up a story. So it's difficult. But where's the line of demarcation? The line of demarcation is, I guess if the state's theory in this case is that, you know, they have shaky credibility. Well, they could make that argument. I mean, if it's limited, you can make that argument to the jury. Hey, these two people can't be believed. Right. You could make that argument. But I guess for the purpose that this was offered for, to prove propensity and to prove lack of consent, and because of the details of this particular offense, the nature of the details, I don't know how, I guess I don't see the probativeness of having these, I guess it just comes down to it. It ends up being too much. This is one of those cases where it ends up just being too much. It's excessive. It's unnecessary. And the too much is what the prejudice is. It's the volume. That's where you draw the line. Where they could have established it with one witness, maybe two. You're right. I mean, maybe that's where the line is drawn. That's the problem. As Justice Burke wrote, this is in Cardamom. There's no precision to this. It's a difficult line drawing process. But in a case like this where the – I didn't write that. I was reversed in that. I was a trial judge. I apologize, Your Honor. He doesn't want to be accused of that. A little bit of a difference. No, I apologize, Your Honor. In this court's decision in Cardamom, there was the – this is a difficult line drawing process. Yeah, there are no hard and fast rules. Right. Again, that's why it probably comes down to the abuse of discretion standard because there isn't a hard and fast rule. You've got to look at the totality of the circumstances and the evidence, and so it's a tough call. And Walston says the actual limits on the trial court's decisions on quantity of propensity evidence to be admitted under 115.7.3 are relatively modest. They are relative. But he also talks about when – after the court finds the probative value of the – if you have this probative versus prejudice test, the two factors that still weigh into that are the nature of the other offenses and the amount, and that's what makes it prejudicial. And in this case, again, I think because the details were so graphic, they were so repetitive, some of the witnesses testified to even worse acts of abuse than – alleged abuse than even Artie. I think the focus of the jury – that's the problem. The focus of the jury became on these four mini-trials. I mean, the evidence that was presented to these four other witnesses really ended up being pretty much four other trials. Well, and that's generally the argument that can be made. What about your ineffective assistance argument? How does that tie into all of this? The way that ties into this is that counsel actually, rather than challenge the admission of the evidence, moved to join all the cases together. And that was denied. It was denied. But the court denied it because he recognized the potential prejudice of doing so. He said that would be prejudicial. But then he grants the state's motion without having to really consider the prejudice because defense counsel never objected, and ultimately that's what happens. It ends up being four trials within a trial. So let me ask this, the tough question. If we were to agree that the prejudicial effect did not outweigh the probative value, this sort of renders the ineffective assistance argument moot, doesn't it? Because where's the prejudice? If we were to hold that, what would be the prejudice then to the defendant? I'm sorry, could I? If you would say that the probative value of this evidence all coming in was proper. Was proper. That defeats the ineffective assistance argument on that issue, doesn't it? Because we would have to find, would we not, that there was prejudice. Yes, you would have to find that there was prejudice, and I guess I would have to come back to the fact that the volume of the evidence was so prejudicial. The details of the evidence, it was emotional. This wasn't just a summary. When I asked you previously how many other witnesses you testified, you said one. And so I applied your hypothetical one, and I said to myself, if it was just one, what do I think the reasonable probability would have been that there wouldn't have been any difference in the verdict? And in my opinion, if there had been one other witness testified to confirm consent, propensity, et cetera, all the other witnesses would be cumulative. They may or may not have been an abuse of discretion, but it wouldn't have changed the outcome. If one witness testified the way they did, and you can pick any one of the four, it wouldn't make any difference whatsoever. He's going to jail, period. So how does it affect our judgment insofar as how are we supposed to say, oh, yes, had it been one instead of four, the jury would have come back with a different verdict, and I don't see that happening. Can you try and attempt to persuade me to the contrary? I would have to argue that with counsel's errors and with all the witnesses testifying, that this is one of those cases where the adversarial process broke down because counsel didn't challenge, did not put this evidence to adversarial testing. But in order to establish prejudice, you have to show a reasonable probability that there would be different results. And what you're talking about is a breakdown, which sounds to me like you're talking about the integrity of the system as opposed to whether or not the result would have been different. And I'm not sure that that's an applicable argument to establish prejudice. It may be an argument that might establish prejudice, but I look at the extra three as cumulative. And if the results weren't the same, then I don't see how this would have caused a breakdown in the system if, in fact, the system would have come up with the same decision anyhow. Well, I think that's the other part of the strict loan analysis. I think we're looking at was the trial fundamentally fair. Was the trial fundamentally fair? And strict loan is not outcome determinative. In the end, we are looking to see whether the evidence was subjected to adversarial testing. And if that broke down, then you cannot have confidence that the system produced a just result. There's also that language in strict loan. And I do think it is a challenge to the integrity of the system. Again, the testimony in this case, cumulative, you say cumulative, I say prejudicial because of the volume of it. That's what makes it so prejudicial. It was emotional. It was not just a summary of what happened. Was there any other of the four witnesses that had or fecal matter was found in some orifice in their body, like their nose or their ear or any place like that, other than the complainant? They testified as to having had to allegedly having to do those acts, yes. Is there anything you can see where this would be a tactical decision? I understand the knee-jerk reaction is to say we've got to keep out all this stuff. But let's say a defense attorney looks at the case, as you just did, and said, you know what, I think there's probably a pretty good possibility that at least one of these other victims is going to be able to testify as to other crimes just to propensity. That means the state, and every one of these cases is an accrued sex assault. Every one of them has mandatory consecutives. If he goes down on one of them, he's, what, 50, 60 years old, he's going away for life. I mean, I'm a defense attorney. I'm sitting there thinking, okay, if he goes down on one of these five charges, he's going away for life based on the mandatory consecutive. The state's going to get five bites of this apple with another person, at least one, maybe two, testifying as to other crimes evidence. The chances of me winning five trials with that other crimes evidence is between slim and none. Why don't I throw this all out at the same time trying to dirty up all these victims as much as I possibly can and maybe get one or two jurors to buy it that these prostitutes are lying? I mean, isn't there at least a possible tactical basis to say, let's try all these together and see what happens, see if we can? I mean, I guess I'm wondering, is it a tactical basis to cause jury confusion? Because along with that, you would also have all those verdict forms on how many counts of aggravated criminal sexual assault. Does that always inert to the detriment of the defendant, jury confusion? It could, yeah. It could, but it could not, too. Again, you're looking at a lot of charges with a lot of mandatory consecutives. And maybe you say, you know what, let's try and confuse this jury. I don't know. I'm just saying, again, the knee jerk reaction is let's try and keep out all this other crimes evidence. But looking at it through reality glasses, some of it's coming in. Right. What's the chances of me winning five of these things? I guess I just don't, I would not consider that to be a reasonable strategy because it's not just coming in for, I mean, the chances of confusing them, it's not just coming in for them to find him guilty of all these offenses. It's also coming in, you're going to tell each juror that, you know, you can consider it both for reasonable doubt, you know, and for preponderance of the evidence as to other crimes on each one. I just, I don't see how, and in fact, you know, I guess that goes to the essence of my argument. If you have all this evidence in there, really, what are the chances that, you know, it's so cumulative, it's so prejudicial, it's so graphic. I do not see that as a reasonable strategy as thinking, hey, maybe one of the jurors, with looking at all these women testifying to these, you know, graphic emotional details, maybe I'll get one, I can confuse the jury enough to acquit. I just don't see that as reasonable. And I think the second part of that is, okay, let's say it is. Let's say, you know, we can somehow construe that to be a reasonable strategy, which I don't agree with. His motion was denied. So at that point, what are you left with? You're left with your role as counsel is to use rules of evidence to try to exclude that evidence or to at least limit the prejudice. And he recognized the prejudice. He himself said, you know, the problem is now we have four mini-trials in this case. But he was totally confused as to what to do with the evidence. That's the problem. Your Honor, if I may conclude, because Mr. Bell was denied a fair trial based on the success of other crimes evidence, we would ask that you reverse his convictions and remand for a new trial. Thank you, Ms. Eagle. Thank you. Thank you. Ms. Joseph, you may proceed. Good morning, Your Honors. Counsel. May it please the Court. I'm Victoria Joseph, and I represent the people of the state of Illinois. Unless there are any questions on the other issues in the case, the people will also respond to the other crimes evidence. But please feel free to ask anything else. Let me ask this question. Having clarified this morning who was involved in the Carter-Moan case, I'd like to ask you a question about that. How do you distinguish, and they argued it extensively in the briefs, how do you distinguish the holding in Carter-Moan, which reversed the trial court for the admission of other crimes evidence, how do you distinguish that case from this case? I think some of the things in Carter-Moan, you were looking at distinctions in facts and overwhelming number of individual acts of assault against, I can't remember how many different witnesses there were in that case. But in this case, we have very, very substantially similar occurrences that happened with each of these women. Wasn't that the allegation in Carter-Moan, though, that they were similar? I believe the facts in this case show a closer similarity. And this was a case in which there were additional women who were sexually assaulted or allegedly sexually assaulted by the defendant. At the sentencing hearing, three additional women came, there were testimony about three additional women. So this wasn't a case where every single woman who was assaulted by this defendant was brought forward in this motion in Lemon-A. There were four that were brought forward. And I think in the circumstances, as Justice Burke brought up, the circumstances of this case are unique in the fact that in normal circumstances, a prostitute is consensually exchanging sex for money. In this case, we did have two of the victim and two of the four at the time who were working as prostitutes at the moment they were approached by the defendant. And it changed from a consensual matter into a non-consensual matter. And because the trial judge recognized this unique circumstance in this case in determining the higher probative value of this additional evidence coming in. Has the state prosecuted the defendant for any of the other ladies' claims? I believe the other four were not prost following this conviction. I don't know if any additional charges have been brought against the defendant at this time. When does the statute of limitations run on the charge? When will he be immune from prosecution, if you know? It should be three years from the date of the offense, shouldn't it? Well, some of them he's already immune. And he was already immune at the time of this trial. Then Joinder wouldn't have made much sense. Well, I'm not sure which ones he was actually, if he was charged with all five at once. That I don't factually remember which ones he was actually charged with. I believe one of the assaults occurred in 2007. Arguably, he's passed the statute of limitations. Arguably on that, he would be passed the statute of limitations. Let me ask you this. Obviously, counsel for the defense has argued that the trial court did not conduct a meaningful weighing process of a probative versus a prejudicial value. You're taking the opposite approach. So where in the record could you point to us to satisfy that? How can you assure us that the court did conduct a meaningful weighing process? What tells us that in this record? What tells us that is the written order the trial judge entered on common law record 175 through 76. There's nothing in the statute on other crimes evidence which explicitly requires the trial judge to explicitly state each factor. Do you use the magical phrases? That's what we're saying. He doesn't have to specifically. He doesn't have to specifically say these are the explicit examples of prejudice that have been overcome by the probative value in this case. He explicitly recognized the discretionary standard provided in Donahoe, saying that he had to determine whether the probative value outweighed the prejudicial effect of the evidence. So he was aware he had to conduct this balancing test. He found nine specific allegations that were in favor of admitting the evidence. He listed those similarities and factual circumstances. He then found the other assaults were approximate in time and the degree of factual similarity to the charged offense. And he remarked there was sufficient similarity in the charged conduct because of the specificity of the testimony regarding the details of the events which appear to correlate to the charged offenses. This, he found, increased the probative value and outweighed the prejudicial effect. So you're saying this Court, in essence, obviously engaged in the meaningful weighing process. Whether or not it was sufficient or adequate could be in the eyes of the beholder. But you're saying the Court, at a minimum, did the weighing process. The Court did the weighing process. Recognized its duty to do that and did it. Yes, Your Honor. And there is nothing – there is no affirmative evidence in the record to show that he did not conduct a meaningful weighing because he clearly shows that he was aware of and weighed the probative value over the prejudicial effect. So we alluded to this morning. I mean, how many witnesses is sufficient? Wouldn't just a couple have done it? Two, three? I mean, why all of these witnesses? Why is that appropriate? Well, again, I think this – the people believe it goes to the context of the offense. And the trial judge recognized that. That where you have a situation, as you did here, and you specifically said, I found the probative value of the other crime's evidence outweighs the prejudicial effect because especially in the case where you have a complainant who is a prostitute and who agreed to go with someone she didn't know and took money for drugs with the anticipation of providing sex to the defendant for money or some other thing of value, the nature and circumstances of what transpired are of an unusual nature and the complainant's testimony, together with the testimony of the others, is probative. What actually happened between the defendant and the complainant, that the acts were not consensual. In this case, I believe Your Honor, as you were talking about, is one enough. If you have another prostitute come in saying, you know, I was raped, I was assaulted, I was degraded by this man. So why isn't that enough? Why wouldn't it be enough? Just asking the question. I think you're never going to know specifically with a jury which way they're going to lean. It becomes a credibility issue that goes to the jury's weight. And there were other credibility issues with many of these women. They had prior convictions. You know, there were credibility determinations that had to be weighed and weighed against their credibility. So to support the details, the very unusual and bizarre details in this case, and defense counsel talks about the graphic details. Well, unfortunately, the details were graphic. That's what the defendant did to these women. And he did a lot of very graphic things to the instant victim. And it was the other testimony of those details that supported the fact that this was not a consensual encounter. And because he was using the defense of consent, it also increased the probative value over the prejudicial effect. Well, was it withdrawn consent? Because the facts seem to be that as this defendant himself described him, he was freaky. And as such, he degraded these women in some very unorthodox ways. And the degradation would appear to have been the reason for the withdrawal of consent. It didn't have anything to do with the man, let alone sex of any type. I think the degradation and just, I don't believe, I don't think it was the victim herself. It was one of the other witnesses testifying to the fact that when it became violent, there was no longer consent. So it's both the degradation and when it turned into the physical bodily injury that the women were finding that this was no longer something that they consented to. When the defendant's attorney's motion to join was denied, was the attorney then obligated to seek to exclude or at least limit this other crime's evidence? Because the attorney didn't do anything. The attorney moved to join, which is one issue. But then there's a second issue. Once that's denied, then the state files the motion to eliminate it. Isn't it then their attorney's duty to try and limit that evidence? The defense attorney did recognize that there was prejudicial effect of the propensity evidence in this case that was specifically recognized in one of his motions in common law, page 182. He tried to move to counter the propensity evidence, to rebut the propensity evidence, which the trial judge said you cannot do negative propensity evidence. But basically he was trying to take down the credibility of these women. But he didn't object to it.  And he didn't make any suggestions to the trial court on methods to limit their testimony to only certain details because these victims were allowed to testify to basically from point A to point Z on their encounters with the defendant. That is correct. Leaving nothing out. He did not seek to limit. He asked for the limiting instruction and he wanted a non-pattern jury instruction defining propensity. But he did not seek to limit the other crimes evidence in this case. Looking at, you know, your strategies might have been to be ineffective so that we would reverse. I would hope that would not be a strategy, Your Honor. Because I believe Your Honor has brought up the looking, you know, this attorney was aware of what this testimony would be. He had all the statements of these women. I think a reasonable attorney could look at that and go this evidence is likely coming in. I don't believe, the people don't believe an objection here would have altered what the trial judge was going to do due to the unique circumstances in this case. Why was no error committed or what is your response to the claim that there should have been a more thorough investigation of the defendant's pro se claim that counsel was ineffective? Well, the people do agree, Your Honor, that you're talking about the Krenkel issue. That the May 4, 2012 allegations that he raised in a pro se motion for a new trial do need to be remanded to be addressed. Those were not addressed. There was nothing. It was just completely ignored. The trial judge cannot ignore the pro se allegations. So you're conceding that? That the May 4, 2012 allegations do need a limited remand for an inquiry. The sentencing hearing trial, the trial judge asked, were you satisfied with your representation? The defendant said no. The trial judge provided an opportunity for him to expound, the defendant to expound on that. And he said, because he, if he brought these issues up when my trial was beginning, I wouldn't be sitting here facing this garbage that is thrown at me. Yeah, but didn't he say something to the effect of, but nobody's listening to me anyway? Nobody, I've got a lot to say, but nobody want to hear what I got to say. And then the trial court didn't say, well, I want to hear what you have to say. The trial court did not. No. So, I mean, my question to you, though, is you seem to be arguing that we have to limit it to just the four corners of that one document that he filed on May 4th or whatever the date was. And what authority do you have? I mean, this was a situation where the trial judge said, if you have a problem with your attorney, put every problem you have in writing and submit it to me, which then we might have these four corners issued because the trial judge gave the person the time and the opportunity to put everything in writing. That didn't happen here. What happened was a document was submitted. Had the judge then had a crankle hearing on that document, are you saying that the judge then would have been within his discretion to say, I'm not going to hear anything else other than what's on that document? No, Your Honor, but I think in looking at the sentencing hearing, he did give the defendant an opportunity to speak. The defendant didn't. The people assert that this was not more than. It wasn't even an allegation. It was showing he was upset with his attorney. There was no allegation of ineffective assistance of counsel actually made to continue an inquiry. There wasn't in the in the letter in the May 4th in the post trial motion. Yes. And there was no inquiry made. So, yes, there needed to be something. But what I'm saying is you're arguing that when it goes back on remand for this crankle hearing, that the defendant, the trial court should limit the defendant to only raising issues that were in the post trial motion. Yes. Where do you have authority for that? You say this. In looking. Well, in looking both at Allen, which was cited in our brief at 4 0 9, Illinois Appellate 3rd 10 58 at 10 76 through 77 and looking at Patrick, which is also cited in our our brief at paragraph 29. It's the duty of the defendant to bring to the trial judge's attention what the ineffective assistance claims are. Right. Well, that's true. But again, if I'm the trial judge and I get that post trial motion and it says here are my two things that I'm saying my trial, my attorney didn't didn't do. And then the defendant starts talking about third thing. I'm obligated to hear that third thing. Am I not? If if he's actually saying what the third thing is. Right. So why can't when he goes back for a hearing on this? Four corner motion. Why can't he then say the same things he could have said before? Because the court never gave him a chance to say those things. In other words, allow him the same prerogatives that he would have had had the crankle hearing been held properly the first time. It would appear you're limiting him in what he can do the second time around from what he could have done the first time. The people, the people maintained that he was given the opportunity to make a further statement. But he didn't actually make a claim requiring further. He didn't submit a claim to the judge other than just saying I have a lot to say. But or he should have brought up these things. Counsel's counsel's reply brief cites more with some language that now more factually is not exactly on point. But the language seems to indicate that your position is not well found. In the reply brief. The court said we know of no rule that precludes appointed counsel from requesting that the trial court consider other claims of possible neglect that he may discover in carrying out the precise duty of his appointment. Because more involved in a situation where they're trying to limit the claims. And in fact, the trial court found in more. This claim has some merit. These other ones don't. So I'm going to point attorney to look into this one claim. Well, then the appellate court said that in the attorney looking at that one claim can raise other claims that he or she may find. But there's also a non specific rambling doesn't require further crankle inquiry. And that's under Taylor and Whitaker cited in our brief on page 4. 47. Are you arguing fax? Are you arguing that the defendant by his statements indicated the nothing further? Or are you claiming that there's there's a limitation based upon law? Or a combination of both. It's a combination in the in the requirement of going into an inquiry requires that there actually has to be something specifically stated to inquire into. And here. He was making non specific. It's. I believe the case law also spoke of when it's indeterminable whether it's an actual claim of ineffective assistance. And this factually, the people are certainly toward that. Should we vacate or should we reverse? As to. As to the crankle hearing. As to the crankle hearing. Well, the. It needs to go back for it needs to go back. There was. There was a pro se allegation that was not addressed by the trial judge. That was ignored. So. The people do submit that it would need to be. Well, my point is, is if we find that there was a procedural defect involved and they vacated, whereas if we find that on the merits of the trial court was wrong. And that there was a meritorious claim that was raised that should have been further developed. Maybe it should be reversed. So. In that milieu or that perspective, what's your position? The position was. Procedurally, there was a claim that was entirely ignored. Your position is that we simply remanded for a crankle remanded for a crankle hearing. Thank you. Zika. See. I just wanted to address one point as to the other crimes issue and the. Principle that although the trial court didn't have to say any type of magic words when he was. You know, weighing prejudice against probative value. I mean, when you look at other cases like Williams is a case cited in the state's brief there when defense counsel objects and specifically argues prejudice. And the court makes a similar ruling, at least there you can assume that he considered those factors because defense counsel objected and brought up those prejudicial factors. So you can assume that the court made way those prejudicial factors. And this idea that an objection by counsel would have been futile. I think this court's decision in Paris shows that that's not the case. Because in that case, counsel objected. And the court specifically said, I am considering cardamom and I'm considering the prejudicial effect. And told the state, you can proceed with your other crimes witnesses. But pick your best two or three incidents as to those witnesses. So an objection wouldn't be futile. Time and time again, when counsel objects to this type of other crimes evidence, the court either limits it or excludes some of it. Maybe excludes all of it. Finds that it's too prejudicial because of its excessiveness. We assume that the trial court followed the law, correct? And the law is that the trial court under the statute must weigh prejudice versus probative value, correct? Unless the record rebuts that presumption. And I would say that because he denied counsel's motion for joinder of all the cases because of what he thought was the potential prejudicial effect. But then in essence, let all this evidence in. The denial of the joinder motion. I mean, I know the trial court did mention prejudice. But the trial court also relied on the fact that it wasn't, these cases weren't subject to permissive joinder, correct? He did. He did. There was a legal basis for it other than the prejudice. In addition to the prejudice, I would say. In addition to, those were two factors. The state brought up the fact that they weren't part of the same comprehensive fashion. He told, the trial court told defense counsel, I appreciate your concerns about judicial economy. But I have to think about the prejudice to this defendant. And then in essence, that prejudice occurred when all the crimes came in. You had four mini-trials. Is it a different weighing though? When we're looking at the Walston factors for permissive joinder, isn't there a different weighing? I mean, a different analysis that the trial court goes through other than 115, 7.3? Or is it the exact same thing? As to prejudice, I guess I would say it's the same thing as to prejudice. Why you wouldn't want all those cases tried together? Because then they would be other crimes that you could use against the defendant. Along with proving his guilt of all those offenses. So I do think that that prejudice component is linked to both considerations, I guess. As for the Crankle hearing, I guess the thing I would say is that since the purpose is to promote consideration of the pro se ineffective assistance claim. I don't know what purpose would be served by hamstringing the trial judge from asking about all the bases that the defendant has for his claim of ineffective assistance. And in addition to that Moore case, when you look at what happened in the Remzig-Miller case, which I also cite in the brief. In that case, the defendant had filed a pro se motion for new trial. And an issue about the failure to call witnesses was actually addressed and litigated. And then she just made a general statement about ineffective assistance of counsel at the sentencing hearing. And the state on appeal tried to argue, well, when she made that general statement, she was referring to what's already been looked into. And this court found that there was nothing really to link that. That her general ineffective assistance of counsel claim should be remanded for this Crankle inquiry. With the proviso that if her only factual basis for that was the failure to call witnesses, the court could move on. Because he already did determine that issue. But if it wasn't, the court should conduct this inquiry and ask about all the bases for that claim. In other words, it's your position that the defendant should be in no different position on remand than he would have been had he been given the opportunity to expand before the judge set your position? That's right, Your Honor. Thank you, Your Honor. We'd like to thank the attorneys for their arguments today. And the case will be taken under advisement. We'll take a short recess.